PITMAN, J.
*926 Plaintiff Holli Henry Mercer appeals the judgment of the trial court which modified a 2009 considered decree of child custody, equally dividing the time of physical custody of the child between Plaintiff and her ex-husband, Defendant Tommy O. Mercer, and designating Defendant as the domiciliary parent. For the following reasons, we affirm.
FACTS
Plaintiff and Defendant married on December 31, 2005, in Mangham, Louisiana. Their son, Dalton H. Mercer, was born on March 26, 2008. The parties separated in July 2008; and, on August 15, 2008, Plaintiff filed a petition for divorce and sought custody of their then four-month-old child.
In 2009, a two-day trial was held to determine the custody of Dalton. The trial court issued a 24-page ruling that named Plaintiff the domiciliary parent from September through May. Defendant was given visitation every other weekend during the school year and split time during the holiday period. During the summer months of June, July and August, Dalton primarily resided with Defendant, and Plaintiff was granted visitation every other weekend. During the course of the next few years, the every-other-weekend visitation period was extended from Friday night until Tuesday.
In August 2016, Defendant filed a petition to modify custody to an even 50/50 time split. In support of his petition, he alleged that Dalton was now 8 years old and entering third grade for the 2016-2017 school year. He also alleged that he had remarried, to Christina Mercer, and that together they have a son, Dillon, who was born in 2011 and would be attending Mangham Elementary for the 2016-2017 school year. He further alleged that he and Christina have, and will continue to provide, an excellent home environment for Dalton, where he can spend time with his younger brother. He complained that Plaintiff had unilaterally changed Dalton's school enrollment from Start Elementary to Family Christian Community School ("FCCS") in Winnsboro and that he wants custody of Dalton to enroll him in Mangham Elementary with his younger brother so that Dalton can spend more time with him and his family.
A conference was held before a hearing officer in September 2016. Prior to the close of the evidence, Plaintiff raised an exception of no right of action and claimed that Defendant's evidence did not meet the standard set forth in Bergeron v. Bergeron , 492 So.2d 1193 (La. 1986). The hearing officer recommended that the petition to modify custody be denied.
Defendant objected to that recommendation and asked that the matter be set for trial. Plaintiff also filed an objection to the hearing officer's report and contended that she objected to Defendant having a four-day weekend period from Friday until Tuesday. She claimed the visitation was disrupting to the minor child and his school, that his grades had fallen and his behavior was becoming worse. She asked that, at a maximum, Defendant be awarded visitation only every other weekend from Friday until Sunday and that the schedule be followed year round. If implemented by the trial court, this suggested visitation plan would have effected an extreme deviation from the considered decree rendered in 2009 since, under the considered decree, Defendant has custody of the child during the summer months and Plaintiff only has visitation during that time period.
The trial was held on March 6, 2017. Plaintiff reurged her exception of no right of action. The trial court took the exception *927 under advisement and allowed the trial to proceed.
At the trial, Molly Govener was called as an expert witness, who testified that she is a licensed professional counselor with a Ph.D. in marriage and family therapy. She testified that she had met with Plaintiff and Dalton in regard to the custody case and that Plaintiff had reported to her seeing "some anger in Dalton that was not normal" and some indications of stress. She stated, however, that she had observed nothing of any significance in either parent's home that would concern her. She did opine that the current custody plan was working out and that Dalton had told her he liked the custody plan and liked to visit his dad. She stated that he "prefers that his main home be with his mom" and seems well adjusted to the current schedule. She further opined that Dalton should be allowed to continue to live primarily with Plaintiff and visit Defendant and that the two parents should be in some type of family therapy.
Defendant testified regarding the allegations in his petition to modify custody and reiterated the facts that he had remarried, that he had a son by his second marriage, that Dalton loves his brother and that Defendant is willing and able to spend more time with Dalton than he was previously able to in 2010. He also testified that he believed Mangham Elementary would be a better school for Dalton for several reasons, including that he would be comfortable there with his younger brother and that he would be able to spend more time with his father's family. He admitted that since the rendition of the considered decree, he had been brought to court over allegations of unpaid child support, at one time as much as $11,000, but that he has paid the balance and that he was current for the two years prior to trial.
Defendant was questioned regarding his decision to change Dalton's school for a third time if he should obtain custody. Although he agreed he did not know which school was the better one, he stated that Dalton's grades were good and had not slipped as a result of Plaintiff changing his school. He discussed his living and work history and stated that he had worked at a plumbing company for two years, then left to go back to a land rig for a year and a half. He currently works for Mercer Air Conditioning, which is owned by his brother.
George Broadway, Defendant's stepfather, testified that he has known Defendant since he was three years old and that he had been aware of the custody issue in this case since it began in 2009. He stated that he sees Defendant two or three times a week and has observed him spending time with Dalton, especially since Dalton has gotten older. He stated, for example, that Defendant coaches Dalton's ball team and takes him hunting. He also stated that he has never seen Defendant abusing or neglecting Dalton. He testified that he had observed Christina interacting with Dalton and Dillon and stated that, from a parental standpoint, she treats both children the same. He noted that he has seen Christina helping Dalton with his homework.
Christina Mercer testified that she was comfortable with Dalton spending more time in her home and that it would not cause any burden, financial or otherwise, on the family. She stated that she is self-employed and is able to drive him to school and pick him up. She testified that they live in a three bedroom, two-bath home and that the two boys share a room with bunk beds.
Plaintiff testified about all the things she does for Dalton and that Defendant and Christina had spoken to Dalton about the legal proceedings and attempted to influence *928 him, telling him he "better at least choose 50/50." She testified that this causes great stress for Dalton, as does Defendant's telling him about his child support payments to her. She stated that he did not pay any schooling expenses at FCCS and has not paid any of Dr. Govener's expenses. She also stated that Dalton has told her that Defendant and Christina fight and that Defendant sometimes leaves the marital residence to stay elsewhere. She testified that FCCS provides a religion class, which Mangham Elementary does not, and that Dalton is very happy in his school and has made new friends.
In October 2017, the trial court rendered a judgment denying Plaintiff's exception and changing the custody arrangement to a joint custody 50/50 time split. Defendant is named as the domiciliary parent, with custody to be shared in two-week increments. The trial court issued extensive and thoughtful reasons for the judgment, which explained in great detail why it decided to change custody. The reasons included a recitation of the circumstances which had changed since the considered decree was rendered, as well as a detailed consideration of all relevant factors found in La. C.C. art. 134, which it deemed indicated an advantage outweighing any detrimental effect the change would have on the child.
Although some factors were deemed to be equal between the parents, the trial court found Defendant was currently employed and was able to provide the child with food, clothing, medical care and other material needs, whereas Plaintiff testified that she had been unemployed for at least a year and was seeking part-time employment. She presented no evidence of having any income with which to provide for herself or the child or to pay for school expenses, and she was currently living with a male companion.
The trial court also found that the factor regarding the length of time the child lived in a stable, adequate environment and the desirability of maintaining continuity of that environment heavily favored Defendant in that he had been remarried for six years, had a son by a second marriage and had included Dalton in his new family unit for regular, extended periods of physical custody in the past years. On the other hand, it found that Plaintiff had moved out of her parents' home where she resided for a long portion of Dalton's life and was now living in a home with a male companion in residence, whom she has no present plans to marry. For these reasons, it also found that the factor relating to the permanence, as a family unit, of the existing or proposed custodial home favored Defendant.
The trial court concluded:
This Court finds that the circumstances of the custodial situation have clearly changed, and that the major reasons cited by Judge McIntyre for naming Holli as domiciliary parent either no longer existed or no longer weigh in favor of Holli to the extent they did in 2009. Under the present circumstances existing in this matter, both parents are almost equally suited to be the domiciliary parent, and the Court finds that dividing the custody of Dalton equally between them will, under the specific circumstances of this case, serve the best interests of the minor child as he continues to grow and mature.
Plaintiff has filed this appeal seeking review of the trial court's decision and claims there was no clear and convincing evidence presented showing that the advantages of a change in the custodial arrangement substantially outweighed any harm likely to be caused by such a change.
DISCUSSION
Plaintiff argues that the trial court erred in modifying a Bergeron custody decree *929 when the main reason for modification was that the father testified he had more time to spend with his child and in modifying a considered decree to a shared custody with the father as domiciliary parent when there was no proof of detrimental effect on the child. She contends that none of the evidence presented at trial would lead a reasonable person to conclude that a change of custody was warranted under the circumstances. She argues that Dalton is very happy with the custody situation as it stands; that Defendant has put undue pressure on the child to express a wish that custody be shared 50/50; that she has been the provider for his educational, medical, dental and religious needs; and that Defendant fell $11,000 behind in child support payments during the eight-year period between the considered decree and the petition to modify custody.
In support of her arguments, Plaintiff cites Bergeron , supra , for the proposition that when a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. She argues that when a party seeks to change custody rendered in a considered decree, the person seeking a modification must show not only that a change of circumstances materially affecting the welfare of the child has occurred since the prior order of custody, but that the modifying parent must also meet the burden of proof set forth in Bergeron . She asserts that these facts show a clear abuse of discretion in the ruling made by the trial court and also show that Defendant failed to meet the burden of proof set forth in Bergeron . For these reasons, she seeks reversal of the order of the trial court.
Defendant argues that custody determinations are made on a case-by-case basis, and the trial court has vast discretion in deciding the matters of child custody and visitation. The discretion is based on the trial court's opportunity to better evaluate the credibility of the witnesses. As long as its factual findings are reasonable in light of the record when reviewed in its entirety, the appellate court may not reverse even though convinced it would have weighed the evidence differently if acting as the trier of fact.
Defendant also argues that the trial court's reasons for judgment showed that it considered and outlined the applicable law, analyzed the testimony offered into the record and applied the testimony and the evidence to each one of the best-interest-of-the-child factors. It concluded that it was in Dalton's best interest to modify custody to give both parties joint shared custody with equal time allocated based on a two-week/two-week rotation and to designate Defendant as the domiciliary parent.
In Bergeron , supra , the Louisiana Supreme Court determined that when a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is "so deleterious to the children as to justify removing them from the environment to which they are accustomed." However, in Mulkey v. Mulkey , 12-2709 (La. 5/7/13), 118 So.3d 357, the court stated that while the heavy burden of proof in custody modification cases was justified for several reasons, the court was convinced that in a narrow class of cases, a modification of custody might be in the child's best interest even though the moving party is unable to show that the present custody is deleterious to the child. The court recognized that the heavy-burden-of-proof rule could *930 inflexibly prevent a modification of custody that is in the child's best interest. For that reason, the court quoted Bergeron and restated the burden of proof as follows:
When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.
Thus, when a party seeks to change custody rendered in a considered decree, the proponent of change must not only show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody, but he or she must also meet the burden of proof set forth in Bergeron .
Mulkey , supra .
Having determined what the new burden of proof was to be, the Mulkey court stated that it agreed with the trial court's finding that a material change in circumstances had occurred since the considered decree was rendered and that the dynamics of both households had changed. At that point, the court stated that it considered whether the burden of proof of Bergeron was met, i.e., the narrow issue presented was whether the moving party proved by clear and convincing evidence that the harm likely to be caused by a change of custody naming him as domiciliary parent was substantially outweighed by its advantages to the child.
Every child custody case must be viewed based on its own particular facts and relationships involved, with the goal of determining what is in the best interest of the child. The determination of the trial court in child custody matters is entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse. Mulkey , supra .
In the case at bar, the trial court found, and stated in its reasons for judgment, that a change of circumstances materially affecting the welfare of the child had occurred since the 2009 order was rendered. Dalton was only four months old when Plaintiff first petitioned the court for custody. He is now nine years old. Plaintiff lived with her parents for many years while Dalton was young, and Defendant was away from home working for long stretches of time. Defendant has remarried and has a wife and new son, and they live in a stable environment where he will be able to spend more time with Dalton. Clearly, a change of circumstances has occurred which would warrant revisiting a custody order rendered almost ten years earlier.
Further, it was incumbent upon Defendant to prove by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. The trial court's reasons for judgment recite why Defendant would be able to provide advantages to his son over those currently being provided by Plaintiff and why it determined that Defendant would be a better domiciliary parent. Specifically, it noted that Defendant was better able to provide the child with food, clothing, medical care and other material needs, the length of time the child lived in a stable, adequate environment and the desirability of maintaining continuity of that environment, and the permanence as a family unit of the existing or proposed custodial home. It also mentioned that in regard to the moral fitness of each party *931 as it affects the welfare of the child, Plaintiff exhibited a greater negativity to Defendant than does he to her.
Of all the factors considered in the reasons for judgment, eight were considered to be equally favorable to both parties, but four specifically were weighted in favor of Defendant. None were specifically weighted in Plaintiff's favor. Therefore, although the trial court stated that "both parents are almost equally suited to be the domiciliary parent," its reasons for judgment indicate that it considered the advantages to naming Defendant domiciliary parent outweighed any harm likely to be caused by a change of environment.
The trial court thoughtfully considered all of the trial testimony and evidence and set forth in great detail the reasons why a change in custody was justified and in Dalton's best interest. We find the record supports the trial court's finding that Defendant has met the burden of Bergeron , supra , and Mulkey , supra , by proving by clear and convincing evidence that circumstances have changed and that any harm caused by a modification of the considered custody decree would be substantially outweighed by its advantages to Dalton.
CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of Defendant Tommy O. Mercer is affirmed. Costs of appeal are assessed to Plaintiff Holli Henry Mercer.
AFFIRMED.
BROWN, C.J., dissents with written reasons.
BROWN, C.J., dissents
In a 2009 considered decree rendered by Judge McIntyre, the mother was named the domiciliary parent during the school year and the father the primary parent during the summer. The father's every other weekend visitation was from Friday to Tuesday and he had half of all holidays.
In 2016, the father filed a petition to modify custody to a 50-50 time split. A conference was held before a hearing officer, who recommended that the petition to modify be denied. A counselor and family therapist said that the child was comfortable and well-adjusted with the current custody schedule.
The trial judge (Judge Dean) recognized that the 2009 ruling was a considered decree and that Bergeron applied.
After considering the La. C.C. art. 134 factors, which he believed were mostly equal, the judge stated in his opinion:
Under the present circumstances existing in this matter, both parents are almost equally suited to be the domiciliary parent, and the court finds that dividing the custody of Dalton equally between them will, under the specific circumstances of this case, serve the best interests of the minor child as he continues to grow and mature. (Emphasis added).
I respectfully dissent from the majority opinion because the modification of custody undermines the standards imposed by Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986). See also Mulkey v. Mulkey, 12-2709 (La. 05/07/13), 118 So.3d 357, 368. The child in this case benefits from the fact that he has two parents who care for him and are willing and able to provide a good home for him. As stated by the trial court, "both parents are almost equally suited to be the domiciliary parent." The evidence reveals that there are advantages and disadvantages relative to the situation of each parent, and, in my opinion, when these are balanced, the decision as to who is best suited to be the domiciliary parent in this *932 case is effectively a draw. The closeness of this matter is readily evidenced by the differences in the decisions reached by the hearing officer and the trial court.
Respectfully, I believe the majority focuses on the manifest error rule while not adequately considering the Bergeron and Mulkey requirements that the father was required to prove by clear and convincing evidence the harm likely to be caused by a change in environment is substantially outweighed by its advantages to the child. In this case the harm to this child is the continuation of custody litigation and parental conflict.
Mindful of the great discretion afforded to the trial court in custody matters, I believe that the trial court's judgment and the majority's opinion, while thoughtful and thorough, are deficient in that the trial court legally erred in not appropriately applying the Bergeron and Mulkey requirements in modifying custody in this case. The result is that a nine-year-old child has been moved from a private school to a public school and has been subjected to the instability of a change of households every two weeks.
APPLICATION FOR REHEARING
Before BROWN, MOORE, PITMAN, GARRETT and COX, JJ.
Rehearing denied.
BROWN, C.J., would grant rehearing.