NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

25-725

JAMIE LYNNE CHANEY

VERSUS

RICHARD ALBERT ROSHTO

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NUMBER 20130901, DIVISION M2
HONORABLE SUSAN L. THEALL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

SHARON DARVILLE WILSON
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sharon Darville Wilson, Gary J. Ortego, and Clayton Davis,
Judges.

AFFIRMED.

**Jamie Lynne Chaney**
**In Proper Person**
**3001 East League City Parkway**
**Apartment 506**
**League City, Texas  77573**
**(720) 261-8971**
**PLAINTIFF/APPELLANT IN PROPER PERSON**


**Evan T. Edwards**
**EDWARDS & BOWIE**
**969 Coolidge Boulevard**
**Lafayette, Louisiana  70503**
**(337) 237-0492**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Richard Albert Roshto**

**WILSON, Judge.**

In this custody proceeding, the mother, Jamie Lynne Chaney (Ms. Chaney), appeals the trial court judgment awarding sole custody of the minor child, F.C.,[1] to F.C.'s father, Richard Albert Roshto (Mr. Roshto). We affirm.

I.

## ISSUES

Ms. Chaney asserts the following assignments of error:[2]

1. The trial court committed legal error in denying Ms. Chaney's oral *Motion to Continue*.

2. The trial court committed legal error in prohibiting Ms. Chaney from calling witnesses or introducing exhibits solely because she had not filed a *Witness and Exhibit List*, despite no pre-trial order or local rule requiring one.

3. The trial court committed legal error by granting Mr. Roshto's oral motion for involuntary dismissal of Ms. Chaney's *Rule to Modify Custody for Relocation and Contempt* without conducting the mandatory relocation analysis.

4. The trial court committed legal error in exceeding the scope of the pleadings by adjudicating Mr. Roshto's *Petition for Ex Parte Custody and Modification of Custody* when it was not set for trial that day.

5. The trial court committed legal error in misapplying the *Bergeron* standard by finding Mr. Roshto met his burden without

---

[1] Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2 do not require the use of initials in this case; however, we choose to use them to protect and maintain the privacy of the minor child. *See Rodock v. Pommier*, 16-809 (La.App. 3 Cir. 2/1/17), 225 So.3d 512, *writ denied*, 17-631 (La. 5/1/17), 221 So.3d 70.

[2] Ms. Chaney's appellate brief was filed in proper person. We take these assignments of error from the designation of the record on appeal filed by Ms. Chaney's appellate counsel before she withdrew. We further note that "[w]here *pro se* litigants are concerned, in the interest of justice, Louisiana appellate courts will read *pro se* filings indulgently and attempt to construe a brief as though assignments of error were properly made." *Richard v. Hawthorne*, 15-559, p. 8 (La.App 5 Cir. 5/12/16), 192 So.3d 273, 278 (footnotes omitted). We do not address Ms. Chaney's demand for $9,650.00 for child support and "reimbursement for attorney['s] fees, car rental, hotel accommodations, fuel expenses, and lost wages due to having to travel to court." That matter is not properly before this court as it was not first raised in the trial court. *Geiger v. State ex rel. Dep't of Health & Hosp.*, 01-2206 (La. 4/12/02), 815 So.2d 80.

admissible evidence of deleterious circumstances or comparative benefit.

6.    The trial court's factual findings were clearly wrong where the evidence showed no endangerment and substantial medical necessity for relocation.

7.    The trial court committed legal error by restricting Ms. Chaney's communication with F.C. without finding that broader contact would harm the child.

## II.

## STANDARD OF REVIEW

The jurisprudence of this circuit has long held that the standard of review in cases involving child custody is whether the trial court abused its discretion in making its decision. *Thomas v. Duhon*, 19-366 (La.App. 3 Cir. 11/6/19), 283 So.3d 1077. Because the trial court is in a better position to evaluate the credibility of the parties and the witnesses in determining the best interests of the child, its decisions are entitled to great weight. *Hawthorne v. Hawthorne*, 96-89 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365. A court of appeal will not disturb the decision of the trial court unless there is a clear abuse of that discretion. *Id.* Reviewing the record in its entirety, we will not reverse a trial court's reasonable factual findings, even if we would have reached a different conclusion if we had been acting as the trier of fact. *Carranza v. Carranza*, 18-971 (La.App. 3 Cir. 6/5/19), 276 So.3d 1028.

*Buller v. Buller*, 22-660, 22-661, pp. 3–4 (La.App. 3 Cir. 3/22/23), 363 So.3d 574, 577. However, if a custody judgment "contains an erroneous application of the law, reviewing courts are not to apply the manifest error standard of review, but rather are to apply the de novo legal standard of review." *Moffett v. Moffett*, 21-594, p. 4 (La.App. 3 Cir. 2/23/22), 335 So.3d 317, 320, *writ denied*, 22-522 (La. 5/3/22), 337 So.3d 161. The same standard of review applies to a trial court's determination in a relocation matter. *Cooper v. Chamberlain*, 18-617, 18-618, 18-619, 18-620 (La.App. 4 Cir. 12/12/18), 266 So.3d 316. In this case, we find no errors of law.

2

## III.

## FACTS AND PROCEDURAL HISTORY

F.C. was born on January 25, 2013. She was premature (twenty-six weeks gestational age) and remained hospitalized in the neonatal intensive care unit (NICU) for five months. This custody dispute began while F.C. was still hospitalized. On May 20, 2013, an order was issued awarding continued emergency custody to Ms. Chaney subject to supervised visitation by Mr. Roshto in the NICU, with other arrangements to be made upon F.C.'s discharge from the hospital. In August of 2013, Mr. Roshto was given additional periods of visitation.

On May 2, 2017, the trial court issued a judgment, which stated that "the provisions set forth hereinafter pertaining to 'custody' (legal custody, physical custody/visitation, and the implementation of custody) shall supersede and take precedence over all previous 'custody' judgments, orders, and decrees entered" in the matter. The judgment maintained joint custody with Ms. Chaney remaining as the "primary domiciliary parent." It provided modifications to physical custody and set forth custodial periods for each parent for the remainder of 2017 and the future by even and odd years.

The parties proceeded under the terms of the May 2, 2017 judgment, with various requests for modification being denied over the years. Then, in September of 2024, Ms. Chaney attempted to relocate to Texas with F.C. Findings of fact made by the hearing officer on December 10, 2024, state: "The mother filed a Rule for Modification of Custody[,] but she also wants to relocate to Texas. Ms. Chaney did not file the proper paperwork to relocate. She was explained the process of the relocation statute and advised to correct her paperwork[,] which she said she will." Ms. Chaney moved to League City, Texas, without F.C.

On January 16, 2025, Mr. Roshto filed an ex parte rule for custody, modification of custody, and objection to relocation. On the same day, the trial court signed an ex parte order of custody granting temporary sole custody of F.C. to Mr. Roshto subject to temporary supervised visitation by Ms. Chaney. A hearing officer conference was set for March 11, 2025.

On March 11, 2025, Ms. Chaney filed a "Rule to Modify Custody for Relocation and Contempt." Ms. Chaney asserted that the move to Texas was necessary because of F.C.'s diagnosis of mitochondrial disease [*i.e.*, polymerase gamma (POLG) mutation] since the closest specialist is at Texas Children's Hospital. Mr. Roshto argued against the move, alleging that F.C.'s gastroenterologist did not think that F.C. has active symptoms from POLG mutation.[3] A hearing on that rule was scheduled for May 5, 2025; however, before that trial date, a hearing officer conference was held on April 21, 2025. At that time, the hearing officer recommended that Mr. Roshto be named primary domiciliary parent with joint custody being maintained and custodial periods being awarded to Ms. Chaney. Ms. Chaney objected and requested a continuance of the May 5, 2025 trial date. The trial date was re-fixed for the week of August 18, 2025.

A trial was held on August 18–19, 2025. The trial court denied Ms. Chaney's oral motion to continue and granted Mr. Roshto's oral motion in limine to exclude any witnesses (other than Ms. Chaney herself) and any documents or exhibits that were not disclosed in compliance with local court rules regarding the exchange of witness and exhibit lists. The trial court went on to dismiss Ms. Chaney's "Rule to Modify Custody for Relocation and Contempt" on Mr. Roshto's oral motion for

---

[3] Mr. Roshto testified that he has the same variant and is asymptomatic.

4

involuntary dismissal. Finally, the trial court granted Mr. Roshto's petition for modification of custody. The judgment, signed October 13, 2025, maintained joint custody, but named Mr. Roshto as the domiciliary parent and set forth the visitation schedule for the school year, summer, and holidays.

F.C. is now thirteen years old and has been diagnosed with POLG mutation, ADHD, global developmental delay, autism, cerebral palsy, seizures, nystagmus, cardiac arrhythmia, chronic lung disease of infancy/asthma, and gastroesophageal reflux.

## IV.

## LAW AND DISCUSSION

*Motion to Continue*

Paul Shoultz represented Ms. Chaney. On May 29, 2025, Mr. Shoultz sought to withdraw from the representation based on non-payment of fees. The order allowing his withdrawal as attorney of record was signed on May 30, 2025.

On the day of trial, August 18, 2025, Ms. Chaney was advised that no motion to enroll or motion for continuance had been filed by any attorney. She indicated that she was "in the process of retaining" a new attorney but that she could not be in court because she had another case that morning. Ms. Chaney did say that her new attorney had "all of the evidence, everything to fight my case. She has everything on a flash drive with her." The trial court stated: "I can't grant a continuance based on you claiming that . . . you're getting ready to pay her . . . because this has been set . . . for quite a while." Ms. Chaney indicated that she did not "have anything to fight her case" because her attorney had it. Mr. Roshto's attorney needed time to return to his office to get his files. The trial court recessed the trial and instructed them both to return to court the next morning.

In court on August 19, 2025, Ms. Chaney indicated that she would be representing herself since her newly hired attorney "had too short of a notice to prepare for trial." She also complained that Mr. Shoultz did not give her any of "his paperwork or anything that has to do with this case." The trial court responded that "we've already . . . been through this yesterday." The trial court again noted that the matter had been pending since October of 2024 and that trial would proceed as scheduled.

"A continuance may be granted in any case if there is good ground therefor." La.Code Civ.P. art. 1601. "The decision to grant or deny a continuance is dependent on the facts of the case and may include consideration of such factors as diligence, good faith, reasonable grounds, fairness to both parties, and the need for the orderly administration of justice." *James v. Our Lady of Lourdes, Inc.*, 18-368, p. 3 (La.App. 3 Cir. 12/12/18), 261 So.3d 921, 923–24. "Equally important is the defendant's corollary right to have his case heard as soon as is practicable." *In re Ginger Evelyn Brazzel 2011 Inter Vivos Trust*, 56,702, p. 6 (La.App. 2 Cir. 12/10/25), 427 So.3d 335, 339.

"The trial court has great discretion in granting or denying a motion for a continuance, and denial of a continuance will not be disturbed on appeal unless the trial court is shown to have abused its discretion." *Ardoin v. Bourgeois*, 04-1663, pp. 2–3 (La.App. 3 Cir. 11/2/05), 916 So.2d 329, 332. "[T]he abuse of discretion standard is highly deferential to the trial court unless the court exercised its discretion based upon an erroneous view of the law or a clearly erroneous view of the facts." *Tran v. Collins*, 20-246, p. 5 (La.App. 4 Cir. 8/20/21), 326 So.3d 1274, 1279. "Generally[,] an abuse of discretion results from a conclusion reached [capriciously] or in an arbitrary manner." *Torrance v. Caddo Par. Police Jury*, 119 So.2d 617, 619

6

(La.App. 2 Cir. 1960). The terms "capriciously" and "arbitrary" typically refer to conclusions reached without substantial evidence to support them or with a disregard of the evidence. *Id*.

In this case, Ms. Chaney first attempted to relocate with F.C. in September of 2024, about a year before the trial. In April of 2025, when the hearing officer recommended that Mr. Roshto be named domiciliary parent, Ms. Chaney filed an objection and asked that the hearing set for May 5, 2025, "be continued because exigent circumstances will prevent the Plaintiff from attending the trial, and the physician witness for whom Plaintiff issued a trial subpoena to testify and produce documents will required a rescheduled trial date." The matter was re-fixed for the week of August 18, 2025. At trial, when Ms. Chaney asked for a second continuance, the trial court did not find that any good ground existed. Considering the facts of this particular case, we find that the trial court did not abuse its discretion in proceeding to trial and denying Ms. Chaney's request for a continuance.

*Motion to Exclude Ms. Chaney's Witness and Exhibits*

Counsel for Mr. Roshto made an oral "motion to exclude any other witnesses she intends to bring on other than herself[] and a motion to exclude any other documents or exhibits that she intends to introduce if she has not provided . . . them, or if we don't have them already through the same sources[.]" No pre-trial order appears in the record; however, Appendix 24.7A of the Louisiana Rules of Court—District Court Rules, relative to the Fifteenth Judicial District, provides, in part, as follows:

> In any event, in any matter in which witnesses are expected to testify or exhibits introduced, the moving party and/or plaintiff shall provide a witness list and a copy of all exhibits reasonably expected to be introduced into evidence to opposing counsel or unrepresented party at least ten (10) days prior to the scheduled hearing or trial. The

7

> responding party and/or defendant shall provide a witness list and a copy of all exhibits reasonably expected to be introduced into evidence to opposing counsel or unrepresented party at least seven (7) days prior to hearing or trial.

Mr. Roshto did provide a witness and exhibit list. Ms. Chaney did not.

Despite her April 30, 2025 motion to continue referring to a "physician witness for whom Plaintiff issued a trial subpoena," the physician is not named. Ms. Chaney did not name any witnesses that she wished to call at trial, and she did not indicate that any witnesses had been subpoenaed for the trial. It does not appear that any witnesses were deposed. Moreover, at the conclusion of Ms. Chaney's testimony, the trial court asked her if she had any other witnesses, and Ms. Chaney responded: "No, ma'am. I don't have anyone here with me today." F.C.'s medical records were introduced into evidence by Mr. Roshto. Furthermore, Ms. Chaney did not proffer any exhibits. She argues that she was denied the ability to present her case due to the improper use of the motion in limine and that counsel for Mr. Roshto abused the motion in limine to exclude needed evidence and proof, but she fails to point to any evidence that she wished to introduce. We note that "[a]lthough the courts may not always hold a layman to the same standards of skill and judgment that is required of an attorney, when he chooses to appear in proper person, he assumes all responsibility for his own inadequacy and lack of knowledge of procedural and substantive law." *Deville v. Watch Tower Bible & Tract Soc., Inc.*, 503 So.2d 705, 706 (La.App. 3 Cir. 1987).

The trial court's ruling on a motion to strike is reviewed under an abuse of discretion standard. *Tran*, 326 So.3d 1274. We find no abuse of discretion in the trial court's granting of Mr. Roshto's motion.

8

*Motion for Involuntary Dismissal*

Ms. Chaney testified on her own behalf, but her ability to call any witnesses or present any evidence was curtailed by the granting of the motion in limine discussed above. She did not proffer any testimony or other evidence. The trial court ruled: "I am looking at the factors right now . . . and I have to tell you, I do find that she's failed to meet her burden of proof on the proposed relocation, and I'm going to grant that motion [for involuntary dismissal]."

Pursuant to La.Code Civ.P. art. 1672(B), in a judge trial, "after the plaintiff has completed the presentation of his evidence, any party . . . may move for a dismissal . . . on the ground that upon the facts and law, the plaintiff has shown no right to relief." Once the motion is made, the trial court "may then determine the facts and render judgment against the plaintiff [.]" *Id.*

The well-established principles of involuntary dismissal apply in relocation cases. *Cooper*, 266 So.3d 316. "[Louisiana Code of Civil Procedure] Article 1672(B) requires the trial court to evaluate all the evidence and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent of the motion." *Carollo v. Carollo*, 13-10, p. 11 (La.App. 1 Cir. 5/31/13), 118 So.3d 53, 61. We review the trial court's ruling on a motion for involuntary dismissal under the manifest error standard. *Id*. "Accordingly, in order to reverse the trial court's grant of involuntary dismissal, we must find, after reviewing the record, that there is no factual basis for its finding or that the finding is clearly wrong or manifestly erroneous." *Id*. at 61–62.

"The person proposing relocation has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child." La.R.S. 9:355.10. "[T]he court shall consider all relevant factors in determining whether

relocation is in the best interest of the child." La.R.S. 9:355.14. That statute sets forth twelve factors that are illustrative of what is relevant to the decision, which are similar in substance to those factors used to determine the best interest of the child pursuant to La.Civ.Code art. 134.

Ms. Chaney gave two reasons for the proposed relocation: (1) F.C. "will be several hours closer to Texas Children's Hospital where she [will] most easily receive regular treatment for her POLG mutation from specialist physicians not available near either parents' homes in Louisiana;" and (2) F.C. "will reside with her mother[,]" who has been her primary caregiver for the majority of her life. Medical records introduced into evidence by Mr. Roshto show that Ms. Chaney and Mr. Roshto were made aware by doctors in both Louisiana and Texas that the POLG mutation was not related to F.C.'s current health issues, which are mostly related to her premature birth, and that F.C. did not have evidence of POLG2-related mitochondrial disorders or require follow up with the Mitochondrial Disorders Clinic in Texas or the Genetics Clinic at Tulane University School of Medicine unless new concerns arise. Moreover, on April 21, 2025, the hearing officer made the following findings of fact and recommendations: (1) Ms. Chaney admitted that she has not made any appointments for F.C. with any providers in Texas; (2) Ms. Chaney did not make sure that F.C. participated in the ABA therapy as recommended by her medical providers; (3) Mr. Roshto can provide more stability for F.C.; (4) the parties should continue to share joint custody with Mr. Roshto being named the domiciliary parent and Ms. Chaney having custodial periods.

For these reasons, we find no manifest error in the trial court's granting of Mr. Roshto's motion for involuntary dismissal.

*Scope of the Pleadings*

Ms. Chaney argues that the trial court exceeded the scope of the pleadings in granting Mr. Roshto primary domiciliary parent status because his petition for modification of custody was not set for trial on August 18, 2025. We disagree.

According to La.Code Civ.P. art. 191, "[a] court possesses inherently all the power necessary for the exercise of its jurisdiction even though not granted expressly by law." Except in the case of a default judgment, "a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief." La.Code Civ.P. art. 862. But Article 862 does not "confer jurisdiction on a court to decide a controversy which the parties have not regularly brought before it." *Ussery v. Ussery*, 583 So.2d 838, 841 (La.App. 2 Cir. 1991). However, pursuant to La.Code Civ.P. art. 1154, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading." If the other party objects on the grounds that evidence "is not within the issues made by the pleadings, the court may allow the pleadings to be amended[.]" *Id*. The court should allow the amendment if "the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission . . . would prejudice him in maintaining his action or defense on the merits." *Id*.

In this case, Ms. Chaney first brought up the issue of relocation in September of 2024. Mr. Roshto then filed an ex parte rule for custody and modification of custody and obtained an ex parte order of temporary sole custody on January 16, 2025. That order set a hearing order conference on March 11, 2025, to resolve "the issue of permanent custody and all other incidental matters connected [t]herewith."

11

On March 11, 2025, Ms. Chaney filed a "Rule to Modify Custody for Relocation and Contempt." That rule was set for hearing on May 5, 2025.

A hearing officer conference was held on Apri. 21, 2025, and the hearing officer recommended that Mr. Roshto be named primary domiciliary parent. On April 30, 2025, Ms. Chaney filed an objection "to the recommendations rendered by the Hearing Officer to resolve the matters pending" and asked for a continuance of the hearing set for May 5, 2025. The matter was re-fixed for the week of August 18, 2025. At the beginning of the trial on August 19, 2025, the following colloquy occurred:

THE COURT:

> We have a request to relocate to Texas by Ms. Chaney, and we have a request to change custody to sole custody, or - -

MR. EDWARDS:

> It's still going to be joint custody, Your Honor. Legally it's going to be joint custody.
>
> . . . .

THE COURT:

> Okay. So you are . . . filing to change domiciliary parent then, I assume?

MR. EDWARDS:

> Yes, Your Honor.
>
> . . . .

MR. EDWARDS:

> Would it be more prudent to try my direct on modification first, or for Ms. Chaney to do her relocation first?

THE COURT:

> Who filed first? I think you did.

MR. EDWARDS:

She originally filed first back in October 2024.

THE COURT:

So, on January 16 of this year [Mr. Roshto] filed an ex parte?

MR. EDWARDS:

Yes. So October of 2024, Ms. Chaney filed a request to relocate. That was filed as just a modification request. It went to hearing officer conference with Ms. Randall. She wouldn't want to move forward because she needed the proper relocation paperwork, and told her what she needed to do to amend her pleadings and then come back, so we - -

. . . .

MR. EDWARDS:

. . . [S]o on January 17 [sic] we filed our ex parte requesting temporary relief [] to stop that move[.] . . .

THE COURT:

I'm going to say you should start on your motion to modify, since really that's what's before the Court, because in October when Ms. Chaney filed, she did not properly file and request to relocate, so. All right. Let's go ahead and start.

It is clear that both the modification of domiciliary parent and the relocation issues were before the court and that both parties understood this. The trial court considered whether Ms. Chaney met the burden of proof on the relocation considering the factors set forth in La.R.S. 9:355.14 and whether Mr. Roshto met the burden of proof under *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), with consideration of the factors in La.Civ.Code art. 134. For these reasons, we find that the trial court did not go beyond the scope of the pleadings in awarding primary domiciliary status to Mr. Roshto.

13

*Change of Domiciliary Parent*

There are two types of custody awards, *i.e.*, considered decrees and stipulated judgments, and it is well settled that "different burdens of proof apply to each of the two types of [] awards." *Tracie F. v. Francisco D.*, 15-1812, p. 10 (La. 3/15/16), 188 So.3d 231, 239. In this instance a considered decree of joint custody, with Ms. Chaney being designated as domiciliary parent, was issued on May 2, 2017. "Traditionally, to support an action for modification of a judgment of child custody, the plaintiff has been required to show that a change in circumstances materially affecting the welfare of the child has occurred since the prior order respecting child custody." *Bergeron*, 492 So.2d at 1195. *Bergon* further established that:

> [w]hen a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.

*Id*. at 1200. "Louisiana courts have found that parties met the *Bergeron* burden by proving through clear and convincing evidence that the advantages of modifying a considered custody decree substantially outweighed the harm caused by changed environment in specific serious instances[.]" *Angelica v. Angelica*, 25-453, p. 9 (La.App. 5 Cir. 4/1/26), ___ So.3d ___, ___.

The trial court stated that "Mr. Roshto has proved by clear and convincing evidence, that any harm that [F.C.] would suffer by being forced to live in Louisiana with her father [is] substantially outweighed by its advantages to [F.C.]" This conclusion is borne out in the trial court's consideration of the factors set forth in La.Civ.Code art. 134. Specifically, the trial court noted the change in circumstances resulting from Ms. Chaney making "kind of a rash decision to move to Texas" and

providing one address to Mr. Roshto even though she never lived there and a second address where she lived with a friend for just a couple of months before she moved to her current address. The trial court was also particularly concerned with the issue of whether F.C. was overmedicated and Ms. Chaney's characterization of Mr. Roshto as bad or evil for wanting to take F.C. off some of the medication. The trial court also noted the fact that Ms. Chaney wanted to keep F.C. on a feeding tube when the doctors had determined it was unnecessary. The trial court pointed out that F.C. had been off the feeding tube for a year and that there had been no problems.

The trial court discussed each factor set forth in La.Civ.Code art. 134. While the trial court found that neither Ms. Chaney nor Mr. Roshto had any issues regarding their moral fitness or problems with substance abuse, it found that Mr. Roshto was able to provide more permanence and more stability for F.C. Mr. Roshto has stable, long-term employment with the same company; owns a home; and has been married to his current wife, Jennifer, since 2018. The court noted that Mr. Roshto's wife was able to homeschool F.C. The court found that while it was "probably accurate" that Ms. Chaney had been the primary caretaker since F.C.'s birth, that was not the controlling factor and that "Mr. Roshto is fully capable of being responsible in caring for [F.C.]" The trial court also stated:

> Ms. Chaney seemed to lay all problems at the feet of Mr. Roshto, and . . . she testified that yes, she would encourage a relationship with father and child, but I think she gave that lip service. I don't believe that that is actually exhibited by any of her behavior or any of her statements.

The court found several facts to be equal between the parties and several to be weighted in favor of Mr. Roshto. None were specifically found to be weighted in favor of Ms. Chaney. We note that "[t]he trial court is not required to make a mechanical evaluation of all the factors listed in Article 134. Nor is it bound to give

15

more wight to one factor over another; the relative weight of each factor is left to the discretion of the trial court." *Galland v. Galland*, 14-343, p 8 (La.App. 3 Cir. 11/26/14), 152 So.3d 1090, 1096, *writ denied*, 15-319 (La. 4/17/15), 168 So.3d 404 (citations omitted).

In *Mercer v. Mercer*, 52, 101, p. 11 (La.App. 2 Cir. 4/11/18), 249 So.3d 924, 930, *writ denied*, 18-808 (La. 6/15/18), 257 So.3d 681, the appellate court found that "although the trial court stated that 'both parents are almost equally suited to be the domiciliary parent,' its reasons for judgment indicate that it considered the advantages to naming [the father] domiciliary parent outweighed any harm likely to be caused by a change of environment." In that case, the trial court determined that the father would be a better domiciliary parent because he was "able to provide advantages to his son over those currently being provided by [the mother,]" and specifically referenced that the father "was better able to provide the child with food, clothing, medical care and other material needs." *Id.* at 930. Further, the trial court mentioned that the mother "exhibited greater negativity to [the father] than does he to her." *Id.* at 931.

We find that the trial court in this case carefully and thoughtfully considered all of the testimony and evidence and gave detailed reasons why the change in custody was warranted and in F.C.'s best interest. The record supports the trial court's finding that Mr. Roshto has met the heavy burden imposed by *Bergeron*, 492 So.2d 1193, and we uphold the trial court's ruling that joint custody be modified to name Mr. Roshto as domiciliary parent.

*Restrictions on Ms. Chaney's Communication with F.C.*

Ms. Chaney points out that communication between her and F.C. was reduced from every day to only Monday, Tuesday, Thursday, and Saturday from 7:00 p.m.

16

to 7:30 p.m. She asserts that the trial court committed legal error by restricting Ms. Chaney's communication with F.C. without finding that broader contact would harm the child. However, she does not brief this issue. We note that the trial court stated that it wanted F.C. to have phone calls with Ms. Chaney but did not want to interfere with the Roshtos' ability to attend church on Wednesday or Sunday. The trial court also voiced concerns about F.C. becoming upset while on the phone with Ms. Chaney. Mrs. Roshto testified that F.C. would become agitated during the phone calls if Ms. Chaney would tell her that she had something for her and would not let F.C. see it or that she was going to take her somewhere or if Ms. Chaney called back multiple times after F.C. indicated that she wanted to end the call. We find no merit to this assignment of error as this is a reasonable restriction within the discretion of the trial court. *See Lawson v. Lawson*, 311 So.2d 624 (La.App. 3 Cir. 1975).

## V.

## <u>CONCLUSION</u>

We affirm the judgment of the trial court in its entirety. Costs of this appeal are assessed to Appellant, Jamie Lynne Chaney.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.